UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARCUS J. LAWRENCE,                                                                    Plaintiff,

v.                                                                   Civil Action No. 3:14-cv-P919-DJH

LADONNA H. THOMPSON *et al.*,                                                        Defendants.

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff Marcus J. Lawrence filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on the initial review of the action pursuant to 28 U.S.C. § 1915A. Upon review of the complaint and its attachments, the Court will dismiss some of Plaintiff's claims and allow others to proceed for further development.

### I.  SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff is an inmate at the Kentucky State Reformatory (KSR). He sues the following Defendants: LaDonna Thompson, the Commissioner of the Kentucky Department of Corrections (KDOC); Governor Steven L. Beshear; Aaron Smith, the Warden of KSR; James Coyne, the Deputy Warden of Security of KSR; Tiffany Ratlif, the Deputy Warden of Operations at KSR; and Michael Williams, the Captain of Internal Affairs at KSR. He sues each person in his or her individual and official capacities. Although he does not identify them as Defendants in the body of the complaint, in the caption, Plaintiff also lists the following as Defendants: the "Commonwealth of Kentucky Department of Corrections"; the "Commonwealth of Kentucky State Reformatory"; the County of Oldham; the City of LaGrange; and the State of Kentucky.

Plaintiff states that on October 9, 2014, between 5:00 pm and 7:00 pm "more than 4 correctional officers shot me with mace on camera for no legal reason. (Excessive force)." He further describes the incident as follows:

> After shot officers jumped on my back and applied a illegal choke hold. (Blocking & restricting airways is attempted murder). While on the floor officers kicked me with their feet. (Assault) While handcuffed officers slammed my head into a steel gate & door for no reason. (Assault) I was called a ni**** because I stumbled when my head had been slamed for the third time. (Hate Crime)

Plaintiff further states, since that date, he has been "forced into a hole by the same assaulting officers without a order or report. (robbery) This began over officer making threats against me if I did not sign his document with my signature (Extortion) I have been refused the right to a fair trial & due process." He states that the officers responsible for the alleged excessive-force incident "have illegally imposed a maximum penalty, fine & punishment against me for violations I did not comit during the arrest. (Retaliation against the victim, witness and informant)."

Plaintiff further states, "Officers committed perjury making claims that they were killed and injured during this event on camera. The Administration is well aware of these cameras recording these officers illegal actions and have been notified by complaints." He further maintains that "Warden James Coyne is responsible for these officers & these recording cameras and is avoiding these videotapes and allowing other officers to punish me for crimes 'they' comitted against me."

To the complaint, Plaintiff attaches a letter he sent to Warden Aaron Smith concerning the October 9, 2014, incident dated December 2, 2014; a document captioned as both a "Show Cause Petition to Dismiss with Prejudice & Settlement Kentucky State Reformatory-2014-03755" and "Objection & Counter Claim Opposition (All Judgments Denied)" dated November

25, 2014; and a document captioned as a "Grievance/Direct Appeal/Complaint 2014-03755" dated October 25, 2014.  The attachments largely discuss the alleged incident, request that the surveillance tapes be provided, allege criminal violations, and demand criminal sanctions and civil remedies.  The Court considers these attachments as offering to show that Plaintiff attempted to exhaust his administrative remedies.  In the "Show Cause Petition," Plaintiff states, "Officer Jeannette M. Sysco[1] told me to 'get out' for objecting to her applying hearsay that was false & perjury on a tape records as record."  He also states, "It is ordered that 'JUDGE' Jeanette Sysco is arrested for treason by affirmative action without delay."  In the "Grievance/Direct Appeal/Complaint," Plaintiff contends that he was assaulted because of a disagreement over his legal mail.  He states, "Officers are retaliating due to the filed complaints."

In addition, Plaintiff also attaches a document he captioned as a "Title 18 U.S.C.A. Motion, Writ Petition & Court Order for Violent Criminal Offense Sanctions" dated October 22, 2014.  The document purports to bring a variety of criminal charges against several of the named Defendants and other individuals for their actions concerning the October 9, 2014, alleged incident.  He maintains that various people engaged in a conspiracy to violate his rights.  The document also contains a lengthy description of the alleged incident, which the Court will not set forth in full herein but will summarize the factual allegations relevant to the Court's initial review.  Plaintiff states, "For no legal reason on the night of October 9th, 2014 after 5:00 pm officers who claim their name's are KEVIN R. MAZZA & Lt (first name unknown?) SCHANK used unnecessary excessive force against me to teach me a lesson about who is the BOSS over some legal mail."  Plaintiff states that after he was sprayed with "OC spray," the following occurred:

---

[1] Plaintiff spells this name as both Sysco and Sisco.  For ease of reference, the Court will use the spelling Sysco.

After officers shot me for no legal reason I was turning around to look and point at the officer so I would remember his face, I was put in a neck choke hold. I did not have any intentions of causing injury or harm to officers before or after being shot. I was about to ask the officer who shot me "what in the hell did you do that for?" . . . Officers handcuffed and yanked me from the floor and purposely ran me head first into a steel gate and door trying to knock me out (ASSAULT & BATTERY). When I stumbled one of the officers stated "you are going to walk ni****." (HATE CRIME). From the face slam and the slams in the gate and door I received a lump or knot on me the top of my head and eye. Other persons in dorm 4 claim the officers kicked me with their feet. Somehow the skin was knocked off my left leg.

Plaintiff also states, "From the night of this extortion & robbery incident I have been

forced & locked in a hole (or segregation) by the assaulting Defendants without due process of

law . . . ." He further states as follows:

On October 20th, 2014 (11 days later) the exact same officers have conducted a ILLEGAL SECRET COURT HEARING (OFF RECORD) without Marcus J. present, . . . the SAME ASSAULTING OFFICERS have purposely & fraudulently created some documents claiming they are together finding Marcus J. guilty knowing they are DEFENDANTS. (PLAYING OFFICER, ATTORNEY, PROSECUTOR, JUDGE, JURY and PUNISHER is TREASON & TYRANNY) . . . It is a fact correction officers KEVIN R. MAZZA, Lt (first name unknown) SCHANK, ERICK S. STEINBERGEN and MICHAEL DESPAIN are not a court, judge or jury.

Plaintiff maintains that a telephone call from an unknown officer instigated the incident and

requests that the surveillance tapes and an audio recording of the telephone call be provided.

In the same attachment, under the heading "Deliberate Indifference & inadequate medical

Emergency Care after the Assault," Plaintiff states the following:

THE KENTUCKY STATE REFORMATORY'S MEDICAL DEPARTMENT refused medical care thanks to the officers after the excessive force incident. 18 hours later on October 10th, 2014 after 11:30 I was taken to the doctor after this attempt to reshape a steel door with my head and told "NO" when asking for a xray. The lady doctor stated IBROPIN would take the "edge" and pain away. THE OFFICERS came 14 days later asking "Did I want a xray done?" (Neglect and Medical Malpractice) It is ordered that arrest be made because these officers are dangerous. They know exactly how to cover up the wrong they do to people. (TEAM PLAYERS)

As relief, Plaintiff requests compensatory and punitive damages, injunctive relief in the form of release from detention, production of the surveillance tapes, and declaratory relief.

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d

478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

### III.  ANALYSIS

**A.  Official-capacity claims and claims against state entities**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Because Defendants Thompson, Beshear, Smith, Coyne, Ratlif, and Williams are officers or employees of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky.  *See Kentucky v. Graham*, 473 U.S. at 166.  To state a § 1983 claim, a plaintiff must allege that a "person" acting under color of state law deprived the plaintiff of a right secured by the Constitution or federal law.  *See* 42 U.S.C. § 1983.  States, state agencies, and state officials or employees sued in their official capacities for money damages are not "persons" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, because Plaintiff seeks money damages from the state, state entities, and state officers or employees in their official capacities, they fail to allege cognizable claims under § 1983.

Additionally, the Eleventh Amendment[2] acts as a bar to claims for monetary damages against these Defendants.  A state, its agencies, and its officials and employees sued in their official capacities for damages may not be sued in federal court unless the state has waived its sovereign immunity under the Eleventh Amendment or Congress has overridden it.  *Kentucky v. Graham*, 473 U.S. at 169 ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 78l, 782 (1978).  In enacting § l983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d l88 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332 (l979)).

Therefore, Plaintiff's damages claims against KDOC, KSR, and the State of Kentucky and his official-capacity claims against Thompson, Beshear, Smith, Coyne, Ratlif, and Williams for monetary damages will be dismissed for failure to state a claim upon which relief can be granted and for seeking monetary relief from Defendants who are immune from such relief.

Plaintiff also requests injunctive relief in the form of "release from this illegal detention." However, Plaintiff cannot seek release through this 42 U.S.C. § 1983 action.  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Barnes v. Lewis*, No. 93-5698, 1993 U.S. App. LEXIS 32652, at

---

[2] The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Although the Eleventh Amendment does not address the situation where a state's own citizen initiates suit against it, case law has interpreted the amendment to foreclose that possibility. *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

*3 (6th Cir. Dec. 10, 1993) (concluding that dismissal is appropriate where § 1983 action seeks equitable relief and challenges the fact or duration of confinement).  Because Plaintiff cannot seek release in this § 1983 action, his official-capacities claims for injunctive relief will also be dismissed for failure to state a claim upon which relief may be granted.

**B.      Claims against county and city**

In addition, Plaintiff lists as Defendants the County of Oldham and the City of LaGrange. However, Plaintiff states no facts against these Defendants, and the Court cannot discern from the complaint or the attachments what claims Plaintiff is bringing against them.  Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). While the Court has a duty to construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the Federal Rules of Civil Procedure by providing Defendants with "fair notice of the basis for his claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  To state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains.  *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976).  The pleading standard set forth in Rule 8 "'does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *Ashcroft v. Iqbal*, 556 U.S. at 678  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (internal citations omitted)).  A claim under § 1983 must allege that specific conduct by the defendant was the proximate cause of the constitutional injury.  *King v. Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986).

Because Plaintiff states no factual allegations concerning Defendants Oldham County or the City of LaGrange, the claims against these two Defendants will be dismissed for failure to state a claim.

### C.  Individual-capacity claims

#### 1.  Verbal abuse and threats

Plaintiff states that he was called a racist epithet and verbally harassed and threatened. The Eighth Amendment proscribes punishments which involve the unnecessary and wanton infliction of pain.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  However, harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation.  *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, No. 3:07-0361, 2008 U.S. Dist. LEXIS 118217, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Therefore, Plaintiff's claims alleging verbal abuse and harassment against any of the Defendants fail to state a claim upon which relief may be granted and will be dismissed.

#### 2.  Criminal charges

Plaintiff makes a number of allegations of crimes committed by Defendants, including hate crimes, robbery, extortion, assault, and attempted murder.  In the complaint and attachments, he also attempts to bring charges and place individuals under arrest.  However, the "[a]uthority to initiate a criminal complaint rests exclusively with state and federal prosecutors." *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986); *see also United States v. Nixon*,

418 U.S. 683, 693 (1974) ("Executive Branch has exclusive authority and absolute discretion to

decide whether to prosecute a case."); *Williams v. Luttrell*, 99 F. App'x 705, 707 (6th Cir. 2004)

("[A]s a private citizen, Williams has no authority to initiate a federal criminal prosecution of the

defendants for their alleged unlawful acts."); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir.

2001) ("A private citizen has no authority to initiate a federal criminal prosecution; that power is

vested exclusively in the executive branch.").  Moreover, to the extent Plaintiff seeks civil

remedies under any criminal statute, he has not cited any such statute which gives rise to a

private civil cause of action.  *See Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Leach v.

Manning*, 105 F. Supp. 2d 707, 717 (E.D. Mich. 2000).  Accordingly, Plaintiff's claims alleging

various violations of criminal law by Defendants or other individuals must be dismissed for

failure to state a claim upon which relief may be granted.

### 3.  Claims concerning prison disciplinary action

Plaintiff states that after the October 9, 2014, incident he was put in segregation.  He

states a "secret court hearing" was held and that he was found guilty fraudulently.  The Court

construes this claim as alleging that he was put in segregation in violation of the Due Process

Clause.  To determine whether segregation of an inmate from the general prison population

involves the deprivation of a liberty interest protected by the Due Process Clause, the Court must

determine if the segregation imposes an "atypical and significant" hardship on the inmate "in

relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483 (1995).

Generally, unless placement in disciplinary segregation is accompanied by a loss of good time

credits or is imposed for a significant period of time creating an unusual hardship for the inmate,

no liberty interest in remaining free from disciplinary confinement will be found.  *Id.* at 484.

Plaintiff cannot successfully claim that his due process rights were violated without establishing

a protected liberty interest because "'process is not an end in itself.'" *Ford v. Harvey*, 106 F.

App'x 397, 399 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)).  Plaintiff's allegations

concerning his placement in segregation do not give rise to a protected liberty interest and

therefore fail to state a constitutional claim.  Plaintiff's claims against any of the Defendants or

others concerning his disciplinary proceedings and placement in segregation will be dismissed

for failure to state a claim.

### 4.  Claims based on supervisory authority

Plaintiff maintains that Defendant Coyne "is responsible for these officers & these

recording cameras and is avoiding these videotapes and allowing other officers to punish me for

crimes 'they' comited against me."  Plaintiff does not state directly what claims he is bringing

against each of the other individual Defendants, and it does not appear that any of the named

individuals were involved in the alleged excessive-force incident.  Based on the supervisory roles

of each of the individual Defendants, the Court construes the complaint and amendments as

alleging that these individuals are responsible based on their supervisory authority over other

officers.  However, the doctrine of *respondeat superior*, or the right to control employees, does

not apply in § 1983 actions to impute liability onto supervisors.  *Monell v. New York City Dep't*

*of Soc. Servs.*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995);

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 556 U.S. at 676; *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)

(stating that supervisory liability "must be based on active unconstitutional behavior and cannot

be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206

(6th Cir. 1998)).  "[S]imple awareness of employees' misconduct does not lead to supervisor

liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).

Plaintiff does not allege that Defendants Thompson, Beshear, Smith, Coyne, Ratlif, or Williams was actively involved in any of the alleged wrongdoing. "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). The Court, therefore, will dismiss the individual-capacity claims against Defendants Thompson, Beshear, Smith, Coyne, Ratlif, and Williams based on their supervisory roles for failure to state a claim upon which relief can be granted.

### 5. Medical care

While Plaintiff does not allege a claim for denial of medical treatment in the body of his complaint, he does allege that he was denied proper medical care in an attachment. The Court will therefore address this claim. Plaintiff reports that he was taken to a doctor 18 hours after the alleged excessive-force incident. He states that he was denied an x-ray immediately after the incident but was offered an x-ray 14 days later. He states that the doctor recommended Ibuprofen to treat his pain.

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A court generally will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Mere disagreement over medical treatment cannot give rise to a

constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996). Thus, a difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate-indifference claim. *Ward v. Smith*, No. 95-6666, 1996 U.S. App. LEXIS 28322, at *2 (6th Cir. Oct. 29, 1996).

Since it is clear that Plaintiff saw a doctor and therefore received some medical attention, his disagreement with the adequacy of the treatment fails to state a claim under § 1983 and will be dismissed. Moreover, as Plaintiff fails to allege facts indicating that any of the named Defendants played any role in his medical care, any state-law claims he may be attempting to bring are also subject to dismissal for failure to state a claim.

### 6. Grievance claims

In addition, while it is not entirely clear, based on the attachments, it appears that Plaintiff is suing Defendant Smith and possibly others based on the handling of his grievances and appeals concerning the incident. Moreover, while he does not name Jeanette Sysco as a Defendant in the complaint, he makes allegations against her concerning the handling of his grievance in an attachment to the complaint.

In any event, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d at 300). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the

grievances.  *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation.").  Thus, where the only allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged constitutional violation.  *Id.*  For these reasons, Plaintiff's § 1983 claims against any of the Defendants or non-Defendant Sysco based on the handling of his grievances will be dismissed for failure to state a claim upon which relief may be granted.

### 7. Conspiracy

Plaintiff also alleges that various people are engaged in a conspiracy against him.  However, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  A conspiracy will exist under § 1983 when there is "an agreement between two or more persons to injure another by unlawful action."  *Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004).  To establish a civil conspiracy claim, a plaintiff must show that (1) a "single plan" existed, (2) the defendants "shared in the general conspiratorial objective" to deprive plaintiff of his constitutional or federal statutory rights, and (3) an "overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiffs.  *Hooks v.*

14

*Hooks*, 771 F.2d 935, 944 (6th Cir. 1985); *see also Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F.

App'x 986, 988 (6th Cir. 2011).  Underlying those requirements is the requirement that the

plaintiff plausibly allege that a right secured by the Constitution or federal statute has been

violated.  *Trans Rail Am.*, 478 F. App'x at 988.  Accordingly, "pleading requirements governing

civil conspiracies are relatively strict."  *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Nowhere in Plaintiff's complaint or attachments does he plead the "specifics" of any

alleged conspiracy such as "when, where, or how the defendants conspired."  *Perry v. Se. Boll*

*Weevil Eradication Found., Inc.*, 154 F. App'x 467, 477 (6th Cir. 2005).  Plaintiff's allegations

are simply conclusory allegations of a conspiracy that do not survive initial review.  Therefore,

Plaintiff's conspiracy claims will be dismissed for failure to state a claim.

### 8.  Excessive-force incident and retaliation

Upon review of the complaint and attachments, the Court will allow Plaintiff's claims

alleging excessive force in violation of the Eighth Amendment and assault and battery to

continue past initial screening.  The Court will also allow the retaliation claims to proceed based

on allegations that Plaintiff was assaulted for complaints he made about his legal mail and for

filing "complaints."  Based on statements in the attachments, however, it is clear that none of the

named Defendants actually were involved in the alleged incident.  Instead, Plaintiff states in an

attachment that Officers Mazza and Schank were the officers involved in the incident,[3] but he

does not name them as Defendants.  Because he names them in the attachments, however, the

Court construes the claims as asserting claims of excessive force, assault and battery, and

---

[3] Plaintiff also mentions Erick S. Steinbergen and Michael Despain in the same attachment.  However, it is unclear if
he is alleging that Steinbergen  and Despain were involved in the excessive-force incident or the subsequent prison
disciplinary action against Plaintiff.

retaliation against Officers Mazza and Schank in their individual capacities. The Court will direct the Clerk of Court to add Mazza and Schank as Defendants to this action.

The Court notes that Plaintiff states that "more than 4 officers" were involved in the incident. To the extent that Plaintiff wishes to add other officers directly involved in the incident as Defendants to this action, **Plaintiff must file a motion to amend the complaint and tender a proposed amended complaint detailing each person's role in the alleged incident.**

## IV. ORDER

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiff's official-capacity claims against all state Defendants and claims against Defendants the Commonwealth of Kentucky Department of Corrections, the Commonwealth of Kentucky State Reformatory, and the State of Kentucky are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants who are immune from such relief.

**IT IS ORDERED** that Plaintiff's claims against Oldham County and the City of LaGrange and his claims against all Defendants concerning verbal abuse and threats, criminal charges, prison disciplinary proceedings, supervisory authority, denial of medical care, grievance handling, and conspiracy are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Clerk of Court is **DIRECTED to terminate** Defendants Thompson, Beshear, Smith, Coyne, Ratlif, Williams, the Commonwealth of Kentucky Department of Corrections, the Commonwealth of Kentucky State Reformatory, the State of Kentucky, the County of Oldham, and the City of LaGrange as parties to this action.

The Clerk of Court is **DIRECTED to add** Corrections Officer Kevin R. Mazza and Lt. Schank as Defendants to this action.

The Court will enter a separate Scheduling Order governing the claims that have been permitted to proceed.

Date:   June 26, 2015

**David J. Hale, Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4415.010