UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARCUS J. LAWRENCE,                                                    Plaintiff,

v.                                        Civil Action No. 3:14-cv-P919-DJH

LADONNA H. THOMPSON *et al.*,                                            Defendants.

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion for summary judgment (DN 44) by Defendants Kevin R. Mazza and Joshua Schank and two motions for trial (DNs 61 & 64) by *pro se* Plaintiff Marcus J. Lawrence. For the following reasons, Defendants' motion for summary judgment will be granted, and Plaintiff's motions for trial will be denied as moot.

### I. PROCEDURAL HISTORY

On December 16, 2014, Plaintiff, who is proceeding *in forma pauperis*, filed the instant 42 U.S.C. § 1983 action making numerous claims against various state officials and employees of Kentucky State Reformatory (KSR), the institution where Plaintiff is currently incarcerated. On June 26, 2015, the Court conducted an initial review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915 and dismissed most of Plaintiff's claims (DN 26). However, the Court allowed Plaintiff's claims of excessive force, retaliation, and assault and battery to proceed against Defendants Mazza and Schank (DN 27).

### II. MATTER BEFORE THE COURT

Throughout the history of this action, Plaintiff has filed documents with the Court in which he attempts to add defendants by putting their names in the caption, makes new claims or allegations, or reasserts claims that were dismissed upon initial review. However, at the

conclusion of its initial review, the Court stated: "The Court notes that Plaintiff states that 'more than 4 officers' were involved in the incident. To the extent that Plaintiff wishes to add other officers directly involved in the incident as Defendants in this action, **Plaintiff must file a motion to amend the complaint and tender a proposed amended complaint detailing each person's role in the alleged incident.**" (DN 26).

On the same date that the Court entered its Memorandum Opinion and Order regarding its initial review, the Court also entered a Memorandum and Order (DN 28) ruling upon several motions that Plaintiff had filed in which he attempted to add defendants to this lawsuit by adding their names to the caption and/or making new allegations against them in the body of the motion. In the Memorandum and Order, the Court stated as follows:

> As Plaintiff has a pattern of adding names to the captions of his filings, the Court **INSTRUCTS** him that the Federal Rules of Civil Procedure do not permit a plaintiff to add a defendant to a lawsuit by simply adding a name to a caption. **If Plaintiff wishes to add defendants or additional claims, he must file a motion to amend the complaint along with a proposed amended complaint and specifically state all claims he wishes to add.**

(DN 28) (emphasis added).

Since the issuance of that Memorandum and Order, Plaintiff has continued to file documents in which he adds defendants to the caption, makes new claims or allegations in the body, or reasserts claims that were dismissed upon initial review. These documents include the Pretrial Memorandum that Plaintiff filed on November 30, 2015 (DN 41); the duplicate Pretrial Memorandum that Plaintiff filed on January 28, 2016 (DN 49); the "Affidavit of Objection" that Plaintiff filed on February 8, 2016 (DN 56) (in which he attempted to add the undersigned and defense counsel as Defendants in this action); the "Objection, Opposition, & Reply to the Defendants' Motion for Summary Judgment" that Plaintiff filed on February 12, 2016 (DN 57); the "Motion for Trial" filed by Plaintiff on May 17, 2016 (DN 61); the "Response to Defendants'

'fear' of this Court setting a Jury trial Date" filed by Plaintiff on June, 9, 2016 (DN 63) (in which he again attempted to add the undersigned and defense counsel as Defendants in this action); and the "Motion for a Public United States Jury Trial" filed by Plaintiff on June 9, 2016 (DN 64). However, Plaintiff never complied with the Court's instructions by filing a motion to amend his complaint or a proposed amended complaint. For this reason, the Court will consider all of these documents to the extent that they contain responses to the summary judgment motion now before the Court. However, the Court will not consider any new allegations or new claims made in these documents or add any defendant to this action based upon these documents because Plaintiff has not complied with Court's orders or the Federal Rules of Civil Procedure regarding such.[1]

## III. FACTUAL BACKGROUND

All of the claims that the Court allowed to proceed are based upon events that occurred on October 9, 2014. Both Plaintiff and Defendants agree that the incident began when

---

[1] *See, e.g.*, *Tucker v. Union of Needletrades*, 407 F.3d 784, 788 (6th Cir. 2005):

> Once a case has progressed to the summary judgment stage . . . "the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A..*, 534 U.S. 506 (2002)] and [the Federal Rules] are inapplicable." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that a plaintiff could not raise a new claim in response to a summary judgment motion); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).").
>
> To permit a plaintiff to do otherwise would subject defendants to unfair surprise. *See Guiffre v. Local Lodge No. 1124, United Steelworkers of Am.*, No. 90-3540, 1991 U.S. App. LEXIS 17698 (6th Cir. July 24, 1991) (unpublished) (refusing to hear claims raised for the first time in opposition to summary judgment because, "having received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery).

Defendant Mazza, a Senior Captain at KSR, telephoned Plaintiff regarding his legal mail around 5 p.m. and that the two had a "disagreement." Plaintiff alleges that, while on the phone, Defendant Mazza tried to "force [him] to sign his name on a document or be 'rearrested and punished by segregation.'"[2] Plaintiff states that he told Defendant Mazza that he was "not [Plaintiff's] boss, dad, mom, or god so his orders don't mean shit." In his affidavit, Defendant Mazza states that when "[Plaintiff] got on the phone, he had a disrespectful tone in his voice, was loud and argumentative, and used profanity. This type of conduct is a clear violation of institutional rules, and I decided that [Plaintiff] should be written up for a disciplinary violation and taken to segregation until the conclusion of his disciplinary hearing."

Both parties agree that after the telephone conversation, Defendant Mazza proceeded to Plaintiff's dormitory to remove Plaintiff. Plaintiff states that when Defendant Mazza arrived, he said, "Your going to the hole . . . Get up against the wall and get in handcuffs." Plaintiff claims that he then began to ask Defendant Mazza questions such as: "Why? What's going on? Who are you? What's the violation? What's the problem? What did I do wrong?" Plaintiff then states that Defendant Mazza told him he was being locked up for disobeying an order. Plaintiff contends that he then said, "No, I don't consent . . . if I'm going to the hole for doing nothing wrong, come on let's go. I can walk and direct myself there . . . If anyone of you officers touch me you will be arrested & charged with assault." Plaintiff then states that Defendant Mazza told him to "get up against the wall & put these handcuffs on" and that Plaintiff stated again, "No I don't consent!" Plaintiff states that Defendant Schank then entered the room and pointed a can

---

[2] All of the handwritten documents that Plaintiff has submitted to the Court conclude with Plaintiff swearing under penalty of perjury that the facts contained therein are true and correct.

4

of "O.C. spray," or pepper spray, at him.[3] Plaintiff states that "even though I was silent and standing absolutely still," Mazza then told Schank to spray him with pepper spray.

According to Defendant Mazza, he told Plaintiff that he would be sprayed with pepper spray if he continued to refuse to be handcuffed. Defendant Mazza contends that when Plaintiff continued to "cuss him" and refuse to be handcuffed, he asked another officer to make a call for assistance over the institutional radio and that Defendant Schank responded. Defendant Mazza states that he asked Plaintiff to comply once again with having handcuffs placed on him, and when he refused, he instructed Defendant Schank to spray Plaintiff with pepper spray, in accordance with "use of force" policies and procedures established by the Kentucky Department of Corrections.

Plaintiff then states that after he was sprayed, he began to turn around to ask the Defendants, "Why in the hell did you do that for?" Plaintiff states that Defendant Mazza then jumped on his back and "applied an illegal chokehold." He continues:

> I could not breath, so I fell forward onto the floor . . . [Defendant] Mazza was so focused, determined, and committed to applying this choke hold, instead of letting go he fell to the floor as I did. Mazza's bodyweight on my back forced my head and face to slam into the floor and cause injury. When I was down on the floor I was kicked. Officers handcuffed me and jerked me on the floor and ran me face first into a steel gate.

According to Defendants Mazza and Schank, after Plaintiff was pepper-sprayed, Plaintiff "made a fist and then lunged toward Defendant Schank." Defendant Mazza states that he then jumped on Plaintiff's back to "gain compliance" and that "his momentum caused [him] to flip over [Plaintiff]" and then hit his head on the ground which caused a laceration. According to Defendants Mazza and Schank, once Plaintiff was restrained, he was escorted out of his dorm.

---

[3] In his affidavit, Defendant Mazza clarifies that "O.C." spray is Oleoresin Capsicum spray, which is commonly referred to as pepper spray. (DN 44, Mazza Aff., § 5).

Both Defendants also aver that Plaintiff was never kicked while he was on the ground or slammed into a gate.

The surveillance video of the incident submitted by Defendants in support of their motion for summary judgment shows the interaction that forms the basis of this suit.[4] Because the video contains no audio, it does not establish what was said by anyone. However, the video does show an un-handcuffed inmate, presumably Plaintiff, being escorted to meet an officer, presumably Defendant Mazza, at around 6:08 p.m. on October 9, 2014. The video shows that the two engaged in conversation and Defendant Mazza stepping toward Plaintiff with handcuffs. As Defendant Mazza steps toward Plaintiff, Plaintiff moves back. Defendant Mazza then steps back as well and the two continue to engage in a conversation for a few minutes. The video then shows Plaintiff stepping toward Defendant Mazza and becoming more demonstrative. Shortly thereafter, another officer, presumably Defendant Schank, arrives on the scene and sprays Plaintiff. When Plaintiff is sprayed, he turns around, and then lunges toward the officers. At that point, one officer jumps on Plaintiff's back, and they both fall to the ground. Three additional officers then help restrain and handcuff Plaintiff. Plaintiff is then escorted away. The video does not show Plaintiff being kicked or being slammed into a gate as he is being restrained.

According to the medical record submitted by Defendants, a licensed nurse practitioner visited Plaintiff at approximately 8 p.m. on October 9, 2014, for "complaint of injury." This record shows that Plaintiff told the nurse that officers had hit him after spraying him in the face

---

[4] The Court notes that Defendants filed a motion to for leave to file the video under seal (DN 40) and that Plaintiff filed a motion for discovery (DN 41) requesting a copy of his video. The Court ruled that although the video could be filed under seal, Defendants had to give Plaintiff an opportunity to view the video since they planned to rely upon it in support of their motion for summary judgment (DN 47). Subsequently, Defendants filed a "Status Report" with the Court stating that they had offered Plaintiff the opportunity to view the video but that he had refused and stated that he wanted to view the video "in court." (DN 54).

6

with mace. It then states: "Pt claims he currently has no injuries." In addition, the medical records show that he refused a skull x-ray on October 24, 2014 and physical examination on October 29, 2014.

Due to the injury sustained by Defendant Mazza during this altercation, Plaintiff received a disciplinary charge for "physical action resulting in death or injury to an employee." He was found guilty of this violation following an adjustment hearing and received 365 days in disciplinary segregation and 1,460 non-restorable good time days lost.

## IV. LEGAL STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence of the non-moving party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by

"showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. It is against this standard that the Court reviews the facts presented.

## IV. ANALYSIS

### A. 42 U.S.C. § 1983 CLAIMS

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Absent either element, a section 1983 claim will not lie. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### 1. Excessive Force

Under the Eighth Amendment, an official's conduct will be found to amount to cruel and unusual punishment "when their offending conduct reflects an unnecessary and wanton infliction of pain." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). In examining an excessive-force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring the court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted [is] sufficiently serious." *Cordell*, 759 F.3d at 580 (internal quotation marks and

citations omitted). This heightened Eighth Amendment standard acknowledges that "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Id.* (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original).

In applying the above standard to varying sets of facts, the Sixth Circuit has reached different conclusions about when a prison official's use of pepper spray against an inmate violates the Eighth Amendment. For example, in *Jennings v. Mitchell*, the Sixth Circuit found no Eighth Amendment violation where a prisoner was sprayed with pepper spray after repeatedly disobeying an order to exit the shower. 93 F. App'x 723, 725 (6th Cir. 2004). The Sixth Circuit has also held in numerous other cases that "the use of . . . chemical agents against recalcitrant prisoners" does not violate the Eighth Amendment. *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases).

In general, courts are more likely to find the use of pepper spray reasonable if the correctional officer could have feared for his or her safety and are less likely to find the use of pepper spray reasonable where the prisoner posed no threat to the security of the institution. *Treats v. Morgan*, 308 F.3d 868 (8th Cir. 2002). In addition, courts have held that the use of pepper spray constitutes excessive force in violation of the Eighth Amendment in three situations – where an officer has used more than a reasonable quantity of pepper spray, where an inmate has been pepper-sprayed without a prior warning, and where officers withhold appropriate medical attention after an inmate was pepper-sprayed. *Williams v. Young*, No. 2:12-cv-0318 JAM KJN P, 2015 U.S. Dist. LEXIS 100692 (E.D. Cal. July 30, 2015) (collecting cases).

Here, Plaintiff admits that he was refusing to be handcuffed when he was pepper-sprayed. He also does not claim that Defendants sprayed him with an excessive amount of pepper spray, sprayed him without any prior warning,[5] or that they withheld medical attention from him after he was pepper-sprayed. Rather, Plaintiff emphasizes that the use of pepper spray constituted excessive force because he was not being loud or aggressive and because he did not touch or injure Defendants prior to being sprayed. He also emphasizes that he was not physically resisting being handcuffed before he was sprayed.

In light of the above-mentioned jurisprudence, the Court holds that because Plaintiff was refusing to comply with a direct order to be handcuffed, was warned that he would be sprayed if he continued to refuse to comply, and received medical treatment immediately following the incident, Defendants Mazza and Schank's use of pepper spray on Plaintiff did not constitute excessive force in violation of the Eighth Amendment. *See also Soto v. Dickey*, 744 F.2d 1260, 1265-70 (7th Cir. 1984) (holding that it appropriate to use pepper spray when an inmate refuses to obey an order to submit to handcuffing so that he can be moved).

To the extent that Plaintiff claims Defendant Mazza used excessive force against him by tackling him after he was pepper-sprayed, the Court also disagrees. The surveillance video shows that Plaintiff moved aggressively toward Defendants after he was pepper-sprayed and that Defendant Mazza tackled Plaintiff to gain control over him so that he could be handcuffed. The video also contradicts Plaintiff's claims that he was kicked or slammed into a gate as he was being restrained. Thus, the evidence shows that the force used by Defendants in restraining

---

[5] Although Plaintiff seems to indicate that he was not given a final warning once Defendant Schank arrived on the scene (DN 49), he does not dispute that Defendant Mazza warned him prior to calling Defendant Schank that if he "continued to refuse to be handcuffed and disobey a direct order, he would be sprayed with [pepper] spray." (DN 44, Ex. 2, Mazza Aff. ¶ 5). Defendant Mazza's statement that he warned Plaintiff that he would be sprayed if he continued to refuse to be handcuffed is also supported by the report of another officer who witnessed the incident. (DN 44, Ex. 5).

Plaintiff was used in a good-faith effort to restore discipline and not maliciously or sadistically to cause harm. This finding is bolstered by the evidence which shows that Plaintiff informed a nurse shortly after the incident that he had not received any injuries as result of the altercation.

Based on the above, the Court concludes that Defendants are entitled to summary judgment on this claim.

## 2. Retaliation

In one of the attachments to his complaint, Plaintiff alleges that Defendants retaliated against him on October 9, 2014, by committing "assault and battery" on him "over legal mail." He states "you cannot shoot people because they disagree with what is going on."[6] Again, although it is not entirely clear, it appears that the "disagreement" that Plaintiff and Defendant Mazza had on the phone was related to Plaintiff's refusal to sign for and/or come pick up his legal mail.

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The plaintiff has the burden of proof regarding all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003); *Green v. Tudor*, 685 F. Supp. 2d 678, 692 (W.D. Mich. 2010). Moreover, the plaintiff must prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If the plaintiff makes such a showing, the defendants may still avoid

---

[6] Throughout his filings, Plaintiff refers to being pepper-sprayed as being "shot at."

11

liability by showing "that [they] would have taken the same action in the absence of the protected activity." *Whiteside v. Parrish*, 387 F. App'x 608, 612 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d at 399); *Jones v. Smolinski*, No. 1:09-CV-633, 2010 U.S. Dist. LEXIS 143638 (W.D. Mich. Aug. 31, 2010).

As set forth above, Defendants have shown that they pepper-sprayed and then physically restrained Plaintiff, not because of a disagreement over his legal mail, but because he repeatedly refused to comply with a directive to be handcuffed and because he moved aggressively toward them. Thus, even assuming that Plaintiff has met his burden of establishing the three elements of a retaliation claim, Defendants have shown that they would have taken the same actions against Plaintiff even in the absence of any purported protected activity involving legal mail.

Thus, the Court concludes that Defendants are entitled to summary judgment on this claim.

## B. STATE-LAW ASSAULT AND BATTERY CLAIMS

In Kentucky, public employees, including corrections officers, enjoy qualified immunity from tort liability for discretionary acts performed in good faith and within the scope of their authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). If the defendant establishes the act was discretionary and within the scope of his authority, the burden shifts to the plaintiff to show that the act was not performed in good faith. *Id.* at 523. Bad faith is demonstrated by violation of a clearly established right or if the officer "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.*

"Police officers generally have a privilege to use reasonably necessary force to preserve order." *Woosley v. City of Paris*, 591 F. Supp. 2d 913, 923 (E.D. Ky. 2008) (citing *Lawson v. Burnett*, 471 S.W.2d 726, 728-29 (Ky. 1971)). Here, for the reasons discussed above, the Court

has determined that Defendants' actions on October 9, 2014, were objectively reasonable. And Plaintiff has not provided evidence from which a reasonable juror could infer subjective bad intent on the part of Defendants. *See Yanero,* 65 S.W.3d at 523. Consequently, the Court will grant Defendants summary judgment on Plaintiff's assault and battery claims for the same reasons it granted summary judgment on the excessive force claim against them. *See Atwell v. Hart Cty.*, 122 F. App'x 215, 219 (6th Cir. 2005).

### VI. PLAINTIFF'S MOTION FOR TRIAL

Because the Court is granting Defendants' motion for summary judgment on all remaining claims, Plaintiff's motions for trial must be denied as moot.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (DN 44) is **GRANTED** and Plaintiff's motions for trial (DNs 61 & 64) are **DENIED** as moot.

Date: June 16, 2016

David J. Hale, Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of Record
4415.011

13